HARRISON *v.* EASSOM.

1. FRAUDS, STATUTE OF—ORAL LEASE FOR MORE THAN ONE YEAR
VOID.
Under the statute of frauds (3 Comp Laws 1915, § 11981),
an oral lease of lands could not extend beyond one year.

2. SAME—ORAL CONTRACT FOR CONVEYANCE OF LAND VOID.
An oral agreement for the conveyance of land is void under
the statute of frauds (3 Comp. Laws 1915, § 11981).

3. SAME—VALIDATED BY PART PERFORMANCE.
A void contract for the sale of lands is sometimes said to
be made valid by acts in part performance.

4. SPECIFIC PERFORMANCE—NOT A MATTER OF RIGHT BUT IN DIS-
CRETION OF COURT.
Specific performance of a contract, whether written or oral,
is not a matter of strict legal right, but rests in the
sound discretion of the court.

5. SAME—ORAL CONTRACT FOR CONVEYANCE OF LAND—PART PER-
FORMANCE—EQUITY—FRAUD.
In proceedings for the specific performance of an oral con-
tract for the conveyance of land, the acts of part per-
formance by plaintiffs, permitted by defendant as though
accepting the void contract as valid, must be to an extent
and of a kind to create such strong equities in plaintiffs'
favor that courts of equity should not permit the statute
of frauds to be used as an instrument of fraud.

6. EVIDENCE—CONCLUSION.
Plaintiffs' assertion that they took exclusive possession as
owners of a strip of land is but a conclusion not borne
out by their own testimony, which shows that they took
it with other land under an oral lease.

7. FRAUDS, STATUTE OF—ESTATES—ORAL CONTRACT AS TO LAND—
POSSESSION.
Where plaintiffs and defendant orally agreed to work cer-
tain land together, including eight acres which was to go
to plaintiffs, selection of which had not yet been made,
their possession was concurrent, and plaintiffs could not
acquire a new or different estate under an oral contract
to work all the land and give defendant a share.

8. SAME — SPECIFIC PERFORMANCE — PART PERFORMANCE OF ORAL
CONTRACT — POSSESSION.

 Taking possession under an oral contract must, to become
an element of part performance, be exclusive, open, and
notorious, under a claim of ownership.

9. SAME — ORAL CONTRACT TO CONVEY — LANDLORD AND TENANT —
PART PERFORMANCE.

 Where plaintiffs went into possession of land as defendant's
tenants, and continued in unbroken possession from the
time of entry without having surrendered possession,
merely continuing their possession under a different claim
of right than the tenancy under which they were let in
could not in itself constitute an act of part performance
of an oral contract to convey.

10. SAME — EVIDENCE — MATERIALITY.

 In proceedings for the specific performance of an oral con-
tract to convey a strip of land, while an oral lease in-
volving the premises in dispute, and as to the amount
plaintiffs owed defendant thereunder, were not directly in
issue, evidence in relation thereto was competent for
whatever light it might throw upon the nature of plain-
tiffs' possession and the termination of the lease.

11. SAME — PART PERFORMANCE — EVIDENCE — SUFFICIENCY.

 The conclusion of the court below that, under the circum-
stances disclosed, the occupancy shown prior to the com-
mencement of this suit "cannot be said to be actual, open,
notorious, hostile, or adverse possession of any part of
the land," entitling plaintiffs to specific performance of an
oral contract to convey, *held*, sustained by the record.

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted October 17, 1919. (Docket No. 83.) De-
cided February 27, 1920.

Bill by Alonzo D. Harrison and another against
Mary Eassom for the specific performance of a land
contract. From a decree dismissing the bill, plain-
tiffs appeal. Affirmed.

*Lincoln H. Titus,* for plaintiffs.
*Alfred S. Frost,* for defendant.

STEERE, J. Plaintiffs seek by bill for specific performance to compel defendant to deed to them an 8-acre parcel of land near the city of Kalamazoo in the southwest quarter of the northeast quarter of section 7, town 3 south, of range 12 west, Texas township, Kalamazoo county, specifically described as "the south 8 acres of the north half of the southwest quarter of the northeast quarter of section 7," in said town and range.

Defendant at one time owned the entire south half of the northeast quarter of said section 7 and resided upon the same for some nine years, the house, barn, outbuildings, etc., being situated upon the northwest corner of the 80 acres. She thereafter sold the west 40 acres upon which was the residence and buildings, retaining the east 40 acres. At the time of the transactions involved in this litigation a man by the name of Garwood owned the west 40 acres upon which there was a mortgage of $550.

Prior to May 2, 1917, defendant owned a house and lot in the city of Kalamazoo valued at $2,300 upon which there was a mortgage of $950, and plaintiffs, with whom she was then on friendly terms, owned a house and lot in Kalamazoo known as Terrace Place which they valued at $2,400, upon which there was a mortgage of $800. Defendant learned that Garwood was desirous of selling his 40 acres or exchanging it for city property and had placed it in the hands of a real estate agent in Kalamazoo for that purpose. She was desirous of exchanging her house and lot in Kalamazoo for a part of the Garwood 40 acres where the buildings were. He wanted to dispose of the entire 40 in which his equity greatly exceeded the equity in her city property. She discussed the matter with plaintiffs who became interested and negotiations followed looking to their joining the equity in their city property with hers and exchanging the two for the

Garwood property, plaintiffs to pay the incumbrance on the entire 40 acres; she was to take 12 acres located in the northwest corner where the buildings were, as she was desirous of securing her former home, and they were to have 28 acres in all, consisting of the south half of the 40 acres, and an additional 8 acres to be selected by them from specified adjacent locations, either in the Garwood 40 or in her 40 acres joining it on the east. All parties are in harmony as to their understanding up to that point.

The disagreement out of which this litigation arises is over the location of the 8 acres. Defendant contends it was agreed plaintiffs might have their choice of two 8-acre parcels—one immediately to the east and at the rear of their south half of the Garwood 40, in the land belonging to her, or an 8 acres from the north half of the Garwood 40 at the rear and east of her 12 acres. Plaintiffs contend that they were to have their choice of three 8-acre tracts—including the two which she concedes, and also an 8-acre strip along the south side of the north half of the Garwood 40, which they subsequently selected and she refused to convey to them.

It was also the understanding between the parties to this suit that after the deal was consummated with Garwood they would take possession of the premises, occupying the buildings belonging to defendant, and plaintiff Alonzo Harrison should run the 80-acre farm, working defendant's portion on shares. Having reached an agreement with Garwood on May 2, 1917, they all went to the office of an attorney and had conveyances made for the exchange. Plaintiffs and defendant deeded to Garwood their city properties subject to the incumbrances upon them and he deeded his 40 to them as they directed, before they separated. They apparently had no difficulty in agreeing that plaintiffs should have the south half of the 40 acres,

between which and the north half an easement for an unopened highway had been granted some years previously in an abortive project for platting, but they failed to reach an exact understanding as to the additional 8 acres plaintiffs were to have. After a protracted discussion without reaching any definite conclusion, which continued until Garwood grew tired of waiting, they accepted his suggestion that he deed defendant the north half and plaintiffs the south half of his 40 acres, and after they had gone out there plaintiffs make their selection from one of the descriptions which had been proposed. They authorized him to convey the 40 to them as he suggested with the understanding between themselves that plaintiffs could make their selection from certain descriptions after they moved upon the farm, whether with a choice of two or three descriptions is in dispute.

Soon after the deal with Garwood was closed plaintiffs and defendant moved upon the premises, under an oral agreement by which Harrison was to have a five years' lease from her. He testified that he went into possession of the whole place at that time and worked the whole 80 acres for a year. They are not in harmony as to many of the terms of this oral lease but agree that he was to occupy the premises as a tenant and work her land on shares. His general statement of the understanding is: "We were both to work the place together and each have one-half, except my rye and corn on the 20." She was to assist Harrison financially in getting a team, seed and other essentials for operating the farm, which she did as he testifies, and was to have quarters in the house. She lived there for several months, at times assisting him at outdoor work upon the land, but trouble soon developed between her and plaintiffs, both indoors and out, which grew more acute as time went on, and early in the fall she resumed her residence in the city. In March

of the following spring she served a formal notice on plaintiffs as her tenants to quit and surrender up to her possession of the premises, defined by a legal description of the 80-acre farm. They left the place in May, at the end of a year's occupancy, and have resided elsewhere since that time.

These parties never had any written agreement between them in relation to this farm, and are now at variance as to material parts of their oral agreements. Plaintiffs' oral lease of the premises could not extend beyond one year, and their oral agreement as to the 8 acres in dispute, specific performance of which is sought to be enforced, was void under the statute of frauds (3 Comp. Laws 1915, § 11981) unless validated by subsequent part performance, as to which the burden of proof rested upon plaintiffs. Finding that they had failed in that particular the trial court dismissed plaintiffs' bill.

It appears quite clearly that failure of these parties to arrive at an agreement as to the exact location of the 8 acres at the time Garwood deeded his 40 acres to them resulted from defendant's objection to plaintiffs having the strip they now claim, which would take about 25 trees of her apple orchard and shut her off from the dedicated but unopened highway between the north and south halves of the 40 acres. Harrison expressed a preference for this, while she wanted him to take the 8 acres off the east end of the north 20 acres, leaving her the west 12 acres, or 8 acres from the south half of her own 40 acres adjoining his 20 on the east. At that time they were friendly and ostensibly considerate of each other, as Garwood's testimony indicates. He states that when she proposed the east end of the north 20 acres Harrison said it would hardly be fair to her as it would shut her off from her back 40, and when he proposed the strip along the south side of the north 20 acres she

protested it would not be fair to him because it would put all the road on his land.

Defendant testified that she did not consent to the 8 acres in question being one of those from which selection could be made and plaintiffs that she did. Garwood testified he thought both agreed to his proposal that the deferred selection could be made out of the three pieces which had been discussed, saying, "That is the way it looked." Of this issue the trial court said:

"I am satisfied that the plaintiffs understood they were to be permitted to choose from three parcels. Whether or not defendant so understood the bargain, I am unable to say."

But assuming that their minds did meet upon the proposition as contended by plaintiffs, the court found they had shown no such possession and part performance as would validate their oral contract and entitle them to a decree in a court of equity for specific performance.

Specific performance of a contract whether written or oral is not a matter of strict legal right but rests in the sound discretion of the court. Upon the subject of compelling performance of an oral contract for sale of land, it was said by Chief Justice COOLEY in *Dickinson* v. *Wright*, 56 Mich. 42:

"A void contract for the sale of lands is sometimes said to be made valid by acts in part performance: *Davis* v. *Strobridge*, 44 Mich. 157; but by this is commonly only meant that one party by suffering the other to take action under and in reliance upon it as if it were valid, without notifying him of any purpose to insist upon its invalidity, thereby establishes against [himself] certain equities in respect to the contract which may be so strong in some cases as to justify a court of equity in enforcing it against him specifically, as if it were and had been from the first without defect."

In other words, the acts of part performance by plaintiffs, permitted by defendant as though accepting the void contract as valid, must be to an extent and of a kind to create such strong equities in plaintiffs' favor that the court is moved to decree enforcement under the principle that courts of equity should not permit the statute of frauds to be used as an instrument of fraud. In this case, when Harrison shortly after taking possession of the premises as her tenant first advised defendant of his intention to select the 8 acres in question she at once objected and made known her attitude as to it. He was not deceived or misled into making valuable improvements upon it in reliance on her recognition of the contract or of his claimed selection under it. He in fact made no improvements on the 8 acres. It was farm land, in no way set apart from or treated differently than the rest of the land to which she held title. Beyond the fact it was cleared land there were no improvements on it except a small portion of the southern edge of her orchard near the farm house. While on the place he worked the 8 acres the same as the rest of her holding and divided what it produced with her. His assertion that he then took exclusive possession of it as owner is in the nature of a conclusion, and not borne out by his own testimony as to the situation. He testified of his tenancy in part as follows:

"I went into possession of the whole place in May, 1917, and I worked it for a year until I was ordered off. * * *

"Q. You worked that whole 80 acres last year?

"A. Yes, sir.

"Q. The same arrangement applied to the whole farm?

"A. Yes, sir. It didn't apply on mine where I had corn and rye in.

"Q. That was on your 20?

"A. Yes, sir."

When defendant by consent of all parties took title to the north 20 acres the right to possession of it went to her with the deed she received. Plaintiffs then concededly have not exercised the selection they now claim and were let into possession as her tenants under an oral lease good for one year only as the statute expressly provides. Accepting Harrison's testimony that they were to work the place together and each have one-half, their possession and hers were concurrent and theirs could not while such relation existed indicate a new or different estate. Taking possession under an oral contract must, to become an element of part performance, be exclusive, open and notorious, under a claim of ownership. The mere continuance of their former possession, if exclusive, under a different claim of title or right than the tenancy under which they were let into possession could not constitute part performance of an oral contract for the purchase of land. These principles as applied to specific performance of an oral contract for sale of real estate are too well settled to demand citation of authority.

Plaintiffs' bill to enforce specific performance was filed April 13, 1918. Harrison testified that he went into possession of the whole place in May, 1917, working it for a year on shares, except the south 20 acres which he owned, and being notified to quit went off the place in May, 1918. He had then made no improvements on this 8 acres, had not paid or taken care of the mortgage according to the conceded terms of his oral contract and had worked it on shares, attorning to defendant as her tenant by accounting to her for half of what it produced. In May, after he had begun this suit, Harrison returned to the place and says of the 8 acres, "this year (1918) I worked that the same as I did mine, it all came together." In that connection he testified to continuous possession under

claim of ownership from the time he selected the 8 acres the year previous. It is pointed out that defendant also testified that after they moved off the place "they still held possession of 8 acres." She also testified that when he came back and went to plowing that land she forbid him doing so, which he denies, with the explanation that he was then plowing on his own 20 acres. Be that as it may, this suit had then been begun and accepting as the testimony of both parties that plaintiffs had continued in unbroken possession of the 8 acres from the time of their first entry as her tenants without having surrendered possession to her, merely continuing their former possession under a different claim of right than the tenancy under which they were let into possession, such continued possession could not in itself constitute an act of part performance.

These parties not only left all their agreements and understandings in regard to the related land deal and lease to rest in parol and are now at hostile variance in certain particulars as to their terms, but in what they subsequently did and said they have so scrambled the whole matter that at the trial the exact line of competent testimony on the issue of specific performance was found by the court to be somewhat obscured under the pleadings which had been filed. Plaintiffs' bill of complaint tells the story as claimed by them including the oral agreement for a five-year lease which they entered upon but were prevented from fully carrying out by her repudiating it and serving notice upon them to quit and surrender up the premises they then occupied, alleging, however, in a separate paragraph that they took possession of the described 8 acres in dispute on May 15, 1917, after notifying defendant of their selection "and have retained actual, open, notorious, hostile and adverse possession thereof since that date."

Defendant's answer traverses plaintiffs' bill paragraph by paragraph according to the approved method of such pleading, admitting, denying and giving her version of the various statements they contain. She denies plaintiffs' allegation of possession of the 8 acres, except such as they took as her tenants; denies any agreement that plaintiffs could select and have this 8 acres, but ratifies in her signed bill the oral agreement as she claims it, entitling them to selection of 8 acres from the other two descriptions, which agreement she is ready and willing to carry out "to the letter"; denies that she ever repudiated the lease as described by plaintiffs, and states she served notice upon them to quit the premises because they failed to fulfill its terms on their part to her great damage, stating some of the particulars in which she claims they failed and she was damaged thereby.

Plaintiffs made general proof of the lease and occupancy under it in harmony with the allegations in the bill, which their counsel stated was to historically advise the court of how they "came to be upon the 52 acres belonging to defendant, working the same on shares." When counsel for defendant on cross-examination of Harrison sought to pursue the subject of the lease farther and show what the agreement was, plaintiffs' counsel objected to that line of evidence as incompetent, had no bearing on the issue they were trying, no relief in that particular being asked and the answer not being in the nature of a cross-bill. On the theory it "may be pertinent to the occupancy of the land," the court allowed the subject of the lease to be gone into at some length but sustained plaintiffs' objections to defendant's broad contention that the chancery court having acquired jurisdiction all issues arising out of the whole transaction should be fully gone into and decided. Amongst other things, defendant was allowed to show against objection that

Harrison was considerably indebted to her in matters arising out of or relating to the lease. This the court conceded, when plaintiffs' counsel objected, was not an issue between the parties under the pleadings but, remarking that it was a chancery case, admitted the testimony "for the purpose of making up a record." To just what extent that matter and some other details shown relating to the lease were proper evidence is perhaps debatable. Plaintiffs' counsel further urge in effect, as we understand it, that the whole line of inquiry into the nature of the lease and what was done under it was improper and should be rejected by this court in trying the case *de novo*. It is true the lease is not directly in issue, nor are the pleadings directed to an accounting between the parties. We think, however, that the admitted testimony has some bearing upon the nature of plaintiffs' possession and on defendant's denial of plaintiffs' charge that she had repudiated the lease without cause. In that aspect and for whatever light it might throw on those questions it was competent; beyond that, issues arising out of the lease itself will be passed without prejudice as outside the pleadings and left undecided.

This record well sustains the conclusion of the trial court that under the circumstances disclosed the occupancy shown prior to commencement of this suit "cannot be said to be actual, open, notorious, hostile or adverse possession of any part of the land."

The decree is affirmed, with costs to defendant.

MOORE, C. J., and BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.

Justice KUHN took no part in this decision.