COUNTY OF CASS *v.* LEE.

1. DEPOSITARIES—STATUTES—DESIGNATION.
    Under 1 Comp. Laws 1929, § 1193 *et seq.*, it is the duty of the board of supervisors to designate biennially depositories of county funds.

2. SAME—STATUTES—BONDS—DISCRETION OF GOVERNING BODIES.
    Act No. 40, Pub. Acts 1932 (1st Ex. Sess.), committed to governing bodies of counties and certain other public bodies the discretion as to whether depository bonds should be required for public moneys.

3. CONTRACTS—CONSTRUCTION—INTENT.
    In construing a contract, intent of the parties must be gathered, not from what one party now says he then thought but failed to communicate to other party, but from the contract itself.

4. DEPOSITARIES—SEPARATION INTO OLD AND NEW DEPOSITS.
    In action against sureties on county fund depository bond for preceding biennium, the deposit is not separated into old and new with reference to date of resolution accepting new bids of banks for such deposits for ensuing biennium, where such separation is not contemplated by statute, bids or resolution (1 Comp. Laws 1929, § 1193 *et seq.*, Act No. 40, Pub. Acts 1932 [1st Ex. Sess.]).

5. SAME—ACCEPTANCE OF NEW DEPOSITARY AGREEMENT.

> Board of supervisors which unequivocally accepted bids of banks for deposit of all county funds for ensuing biennium, which bids expressly refused to furnish depository bonds in compliance with Act No. 40, Pub. Acts 1932 (1st Ex. Sess.), *held*, to have effected a new depository arrangement that superseded and discharged all former ones except as expressly reserved.

> BUSHNELL, J., dissenting.

Appeal from Cass; Warner (Glenn E.), J. Submitted January 10, 1935. (Docket No. 44, Calendar No. 38,138.) Decided May 17, 1935.

Assumpsit by County of Cass, against Fred E. Lee and others on surety bond. Judgment for plaintiff. Defendants appeal. Reversed, without new trial.

*Ulysses S. Eby* and *Carroll B. Jones,* for plaintiff.

*Carl D. Mosier, Harry C. Howard* and *Gore, Harvey & Fisher,* for defendants.

FEAD, J. 1 Comp. Laws 1929, § 1193 *et seq.,* are specific in their provisions for deposit of county funds. Under the statute the bond at bar expired December 31, 1932. It was the duty of the board of supervisors to designate depositories for the two-year period beginning January 1, 1933. The bid of the five banks of the county, filed October 18, 1932, was provided for by statute and covered the ensuing two years after December 31st. It was the duty of the board to accept or reject the bid. If it accepted, it would contract for the safe keeping of the funds and arrange the depository bond. If it rejected the bid, it was bound to seek bids from other banks. The law provided that no county

moneys should be deposited until a depository bond had been approved.

Act No. 40, Pub. Acts 1932 (1st Ex. Sess.), made no change in the machinery of the above statute except that it suspended operation of the provision requiring depository bonds and committed to the board the discretion as to whether bonds should be required.  This act was adopted to relieve an intolerable situation caused by banking conditions, refusal of surety companies to write depository bonds or official bonds carrying depository liability, and inability of private sureties to qualify or their unwillingness to assume the risk of bank failures. Suspension of laws requiring depository bonds was necessary to carry on the public business and to prevent general bank failures.  It was done by providing that all public bodies, except the State, should designate depositories, the designation to relieve the bonds of officers from liability for bank deposits, and permitting local funds to be deposited locally on such conditions as local boards should find possible or advisable.

In line with what seems to have been a practice of the board of supervisors, the matter of deposits was not determined at the October, 1932, meeting, but the bid was referred to the judiciary committee and the meeting was adjourned to January.  On January 9, 1933, the board adopted a resolution:

"On motion of Supervisor Harwood, supported by Supervisor Carter, the following county banks were named as depositories: The clerk and treasurer were instructed to divide the funds as equally among the five banks as possible."

The banks named were the five which had submitted the bid in October.  Informally and not of

record, in October and January, the board and the judiciary committee discussed the clause in the bid:

"We will furnish no bond for such deposits in compliance with Act No. 40, Pub. Acts 1932 (1st Ex. Sess.)."

The movers of the resolution testified they thought the former bonds would continue to cover past and future deposits, and so the failure to insert in the resolution a requirement for depository bonds was intentional. This view was not communicated to the banks or sureties; nor can it change the legal effect of what was done. They understood the resolution was an acceptance of the bid.

Aside from the understanding of individual supervisors, the bid and resolution constituted an offer and acceptance, resulting in a contract, in accordance with the statutes and the powers of the board, for deposit of county funds for two years without depository bonds. It substituted a new contract of deposit for the arrangement which had expired on December 31st. If a new depository bond had been ordered and given, it would have been substituted for the former bond and have discharged it. *Lawrence* v. *American Surety Co. of New York,* 263 Mich. 586, 604 (88 A. L. R. 535). And the new bond would have covered both existing and future deposits.

"Presentation and approval of security for funds already deposited is equivalent to withdrawal and redeposit and releases the former security from future liability and binds the new, if so intended." *Lawrence* v. *American Surety Co. of New York, supra,* 602.

The intention must be gathered not from what a party now says he then thought but from the con-

tract itself. The unequivocal acceptance of the offer fixed the intention of the parties to create a depository contract without bonds. It could have no other effect than a substitution for the former arrangement and its release.

Separation of the deposits into old and new, with reference to the date of the resolution, is artificial and arbitrary. The statute does not provide for it. The statute contemplated a new arrangement after December 31, 1932, covering all county funds. The board could have ordered a separation and bond for part but did not. The bid did not suggest a division; nor did the resolution. On the contrary, the latter contemplated a single arrangement covering all funds because it provided for equal distribution among the banks.

*United States Fidelity & Guaranty Co.* v. *City of Pensacola,* 68 Fla. 357 (67 South. 87, Ann. Cas. 1916 B, 1236), and *contra* cases, *Pacific County* v. *Illinois Surety Co.,* 234 Fed. 97, and *United States Fidelity & Guaranty Co.* v. *American Bonding Co.,* 31 Okla. 669 (122 Pac. 142), are not in point because they did not involve a new depository agreement made after the termination of the bond nor a statute such as Act No. 40, Pub. Acts 1932 (1st Ex. Sess.).

In my opinion, the invoking of Act No. 40 results in a new depository arrangement which supersedes and discharges all former ones except as they may be expressly reserved. Upon no other construction could the purpose of the statute have been worked out and the public interest and necessities of official business conserved.

Reversed, without new trial, and with costs to defendants.

POTTER, C. J., and NELSON SHARPE, NORTH, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred with FEAD, J.

BUSHNELL, J. (*dissenting*).   The county of Cass brings this action to recover from defendants as sureties for Lee State Bank, a depository of the county funds.   The conditions of the bond are as follows:

"Now, therefore, the condition of this obligation is such that if the said Lee State Bank shall as said depository receive the moneys turned over to it by the treasurer of said county and shall receipt for the same and shall hold same subject to the order of said treasurer and shall pay same over on such order and shall protect the said county of Cass against loss from the insolvency of said bank and against loss from any and all causes as to such funds so deposited, and that said bank shall keep an accurate account of said funds so deposited, and shall pay to the said county treasurer of said county two per cent. per annum interest on the daily balances of such treasurer as such, then the above obligation to be void, otherwise to be and remain in full force."

By reading the provisions of 1 Comp. Laws 1929, § 1194, into the bond, *County of Oakland* v. *Central West Casualty Co.*, 266 Mich. 438, and considering the evidence submitted at the trial, it appears that the bond was for the calendar years 1931 and 1932. At the end of this period the balance in the county's commercial account was $1,044.55 and in the savings account $17,058.32.

The Lee State Bank and four others filed with the county clerk, in October, 1932, a bid agreeing to pay interest for the next two ensuing years at one per cent. per annum, and stated therein

"We will furnish no bond for such deposits in compliance with Act No. 40, Pub. Acts 1932 (1st Ex. Sess.)."

No action was taken on this bid until the adjourned annual meeting January 9, 1933, when the supervisors by resolution instructed the clerk and treasurer to divide funds as equally as possible among the five bidding banks. A new county treasurer took office on January 1, 1933, and he deposited certain funds with the Lee State Bank and withdrew others. Following the closing of the banks of the State by proclamation of the governor, this bank on July 6, 1933, offered a plan to resume business, whereupon the county filed its bill of complaint asking that a review be had of the proposed plan, that a determination be made by the court on the county's claim and that the court decree said claim to be paid in full.

Following the decree in favor of the county, in a sum not important here, certain payments were made to the county and bank certificates issued for the balance of the fund found to be due. The county then brought the instant suit; stipulations were executed as to the effect of the chancery action, a jury was waived and the court filed its opinion, rendering verdict against the three defendants for $8,404, such sum being the entire balance due from the bank in the chancery proceedings. Judgment was entered for this amount which, with interest, amounted to $8,658.86.

Appellants contend that the liability under the bond terminated December 31, 1932, and they are not liable for any money on deposit thereafter, the county having had a reasonable opportunity to draw out all of its moneys before the bank was closed by the governor's proclamation on February 14, 1933.

They also urge that the notice contained in the bid of October, 1932, terminated and canceled the bond. We held in *Lawrence* v. *American Surety Co. of New York,* 263 Mich. 586, 603 (88 A. L. R. 535):

"The surety continues liable for deposits made during the life of the bond although not demanded until after its expiration, at least for a reasonable time."

Also, see cases there cited.

The record shows a demand on February 11, 1933. With the statute read into the bond, we have a case exactly in point with *United States Fidelity & Guaranty Co.* v. *City of Pensacola,* 68 Fla. 357 (67 South. 87, Ann. Cas. 1916 B, 1236), cited in the *Lawrence* opinion, from which we quote the following:

"The obligation was not merely to insure or secure the payment of warrants drawn by the city on its deposits during the contemplated period, but to pay over all moneys received on deposit with the bank from the city during the stated period. The obligation to pay over all moneys deposited during the contemplated period continued though the time had expired during which deposits could be made under the protection of the bond. * * * Rendering a statement of funds on hand is not an accounting for or a paying over of the funds under the provisions of the bond. * * *

"In effect the obligation of the defendant is that the bank 'shall faithfully account for and pay over all moneys which may be deposited with it' by the city from the date of the bond to November 13, 1913; and this obligation continues after November 1, 1913, until all the moneys deposited to November 1, 1913, by the city with the bank have been 'faithfully accounted for and paid over,' or until the ob-

ligation is extinguished by the parties or by operation of law."

Our computation of the moneys covered by the bond is taken from the record and the supplemental statement of bank payments filed by defendant at the request of the court. The balance on hand December 31, 1932, totaling $18,102.87 should be credited with a withdrawal by the county on February 2, of $7,033.61, and the payment by the bank after reorganization on December 18, 1933, of $5,662.56, making a total credit of $12,696.17, leaving a balance due for which the sureties are liable of $5,406.70. We have not overlooked the additional amount of $26.52 paid by the bank but as this is interest allowed it should not be credited on the sureties' obligation.

The judgment heretofore entered should be modified to the extent of the difference between the foregoing amount and the verdict rendered by the court of $8,404, reducing the judgment by $2,997.30. Because of this reduction, when the judgment is paid, the participation certificates received by plaintiff in settlement of the chancery case should be assigned to defendants, but only in the reduced amount. Except as otherwise modified, the judgment heretofore entered should be affirmed. Appellants should have costs of this court because of the modification of the judgment.