DAUGHERTY v. POPPEN.

1. CONTRACTS—CONDITION PRECEDENT.

Evidence, showing that plaintiff was to move onto farm, improve buildings and work farm and take care of defendant's decedent and wife during the remainder of their life time in return for farm upon death of survivor was at first on a trial basis, made the contractual status dependent on a condition precedent.

2. FRAUDS, STATUTE OF—ORAL CONTRACTS.

A verbal contract for the conveyance of real estate is void under the statute of frauds (3 Comp. Laws 1929, § 13413).

3. SPECIFIC PERFORMANCE—BURDEN OF PROOF—PART PERFORMANCE.

One seeking specific performance of a contract to leave property by will has the burden of proving the contract by clear and

---

Payment as defense to statute of frauds, see 1 Restatement, Contracts, § 205; partial performance as defense, § 198.

satisfactory evidence and that there were such acts of performance as fairly entitled him to such remedy (3 Comp. Laws 1929, § 13415).

4. EVIDENCE—ADMISSIONS—DECEDENTS.
Testimony of admissions claimed to have been made in chance or casual conversations is entitled to but little weight, should be received with caution, and when such admissions are claimed to have been made by one deceased the caution should deepen into suspicion.

5. SPECIFIC PERFORMANCE—TESTAMENTARY INTENT—CONTRACT TO LEAVE PROPERTY BY WILL.
Specific performance of a contract to leave property by will, will not be granted on testimony indicating a testamentary intention without there being sufficient evidence of the existence of a contract.

6. SAME—ORAL CONTRACT TO LEAVE PROPERTY BY WILL—EVIDENCE.
In suit for specific performance of oral contract to leave 80-acre farm by will, evidence *held*, insufficient to permit a finding as to specific details of alleged contract between plaintiff and deceased.

FRAUDS, STATUTE OF—PAYMENT OF MONEY.
Payment of money is not alone sufficient to remove a contract from the operation of the statute of frauds (3 Comp. Laws 1929, §§ 13413, 13415).

8. CONTRACTS—ACTS PREVIOUS TO MAKING CONTRACT.
Acts done prior to the making of a contract cannot be regarded as performance under it.

9. SPECIFIC PERFORMANCE—PART PERFORMANCE—EVIDENCE.
Evidence of stepson's partial performance of alleged contract with decedent whereby latter was to leave plaintiff an 80-acre farm *held*, meager and even if sufficient to establish the part performance, such performance would not justify decree of specific performance.

10. SAME — EQUITY — PART PERFORMANCE — FRAUD — ESTOPPEL — FRAUDS, STATUTE OF.
Part performance, while an essential in the test, does not in itself comprehend the whole doctrine of equitable relief in suits for specific performance of an oral contract to leave property by will; misleading, fraudulent conduct by act or acquiescence is the underlying thought which moves the chancery court un-

der the principle of equitable estoppel to deny resort to the statute of frauds as an instrument of fraud (3 Comp. Laws 1929, § 13415).

11. SAME—ACTS PREVIOUS TO MAKING CONTRACT.

Fact that stepson moved onto 80-acre farm from place where he had lived theretofore, and made some improvements which tended to facilitate his enjoyment of farm while he was a tenant and before it was even claimed there was an agreement by decedent stepfather to leave farm to plaintiff and while their arrangement was merely tentative *held*, not to entitle latter to decree of specific performance.

12. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-CEASED—WILLS.

Exclusion of testimony as to paper containing substance of will claimed to have been made in decedent's handwriting, which was sought to be presented by plaintiff in suit for specific performance of an alleged oral agreement by deceased to leave 80-acre farm to plaintiff by will, was correct since it was a matter equally within the knowledge of deceased (3 Comp. Laws 1929, § 14219).

13. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED— IMPROVEMENTS ON FARM—SUPERVISION BY DECEDENT.

Testimony by plaintiff, in suit for specific performance of alleged contract by defendant's decedent to leave farm to plaintiff, as to improvements on the farm made while decedent supervised such action and helped plaintiff, was properly excluded as a matter equally within knowledge of deceased (3 Comp. Laws 1929, § 14219).

Appeal from Ottawa; Miles (Fred T.), J. Submitted October 9, 1946. (Docket No. 25, Calendar No. 43,487.) Decided January 6, 1947.

Bill by Louis Daugherty against Cyrus M. Poppen, administrator of the estate of James Filmore Thorp, deceased, for specific performance of an alleged oral agreement to convey real estate. Decree for defendant. Plaintiff appeals. Affirmed.

*Frank Post,* for plaintiff.

*George H. Cross,* for defendant.

CARR, C. J.    Plaintiff brought suit in the circuit court for the specific performance of a verbal agreement for the conveyance of an 80-acre farm in Ottawa county, claimed to have been made between plaintiff and his stepfather, James Thorp. The defendants are the administrator of the estate, and the heirs at law, of Mr. Thorp, who died in June, 1945. Plaintiff's claims as to the circumstances under which the alleged agreement was made, and the terms and conditions thereof, are set forth in paragraphs 4 and 5 of the bill of complaint as follows:

"4.    That in the month of February, 1943, after said Thorp had been hurt and had come home from the hospital plaintiff made an oral agreement with said Thorp, in the presence of and with the consent of said Mrs. Thorp, for the conveyance and transfer of said 80-acre farm to said plaintiff which agreement is as follows: That said Thorp would give said 80-acre farm to said plaintiff, to take effect upon the death of both he and Mrs. Thorp, if plaintiff would look after said Thorps, wait upon them, take them to town and such other places as they might have need of going, and to take care of them, if necessary. That at the death of said Thorp, plaintiff should see that he got a decent burial and place a suitable stone on his grave. That it was part of this agreement that said Thorp would live on his own income as long as he reasonably could but should the same be insufficient or should he leave any bills for his living expenses at the time of his death, they should be paid by the plaintiff or come out of said 80 acres first and the balance to go to plaintiff. It was part of this agreement that said plaintiff should move on this 80-acre farm as soon as he could and to do so he could repair and improve the buildings and make them livable, and likewise improve the farm, and that plaintiff should pay to the said Thorps so long as either of them should live the sum of $300 a year. That both parties agreed to carry out their part of the agreement

in good faith, and each relied upon each other's honesty and fairness in carrying out and staying within the reasonable bounds of the agreement. It was further agreed at that time, that the parties should try it out and see how it went, and if said Thorp and plaintiff was satisfied that the agreement would work out, then said Thorp would make out some kind of paper or will by which the title to said 80 acres would pass to said plaintiff after the death of both of said Thorps.

"5. That about a year and a half later the said Thorp informed plaintiff that he (Thorp) thought the agreement would work out and plaintiff thought so too. That said Thorp informed plaintiff that he (Thorp) thought a will would be the best thing for him to make out so that everybodies' interest of the parties involved would be protected. That in the meantime said plaintiff had purchased a tractor and tractor tools so that he might work the farm, with the assistance of said Thorp, each owning one-half interest therein. Said tools being more particularly described as: 1 F-12 Forwell Tractor, 1 2-bottom tractor plow; 1 tractor cultivator and 1 three-section drag. That at this time the agreement was slightly changed to the effect that instead of paying $300 a year to the Thorps, he should pay the sum of $200 plus the taxes and insurance and that plaintiff should have said Thorp's half interest in said tools above mentioned, and that said tools would go with the farm."

It fairly appears from the language above quoted that the arrangement claimed by plaintiff was at the outset merely tentative. The parties were to "try it out" and, if mutually satisfied, such arrangement should become operative. The contractual status was dependent on a condition precedent. *Weber* v. *Hall Brothers,* 231 Mich. 493; *McIsaac* v. *Hale,* 104 Conn. 374 (132 Atl. 916). Had either party not been satisfied, the arrangement, as alleged by plain-

tiff, would have ended without rights or obligations having accrued on either side. Plaintiff alleges, however, that the condition was satisfied, and relies on the theory that a contractual relation was created. The time when the contractual relationship was established must necessarily be taken into consideration in determining the issues involved in the case.

It is conceded that a verbal contract for the conveyance of real estate is void under the provisions of 3 Comp. Laws 1929, § 13413 (Stat. Ann. § 26.908), which reads in part as follows:

"Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing."

Plaintiff, however, relies on 3 Comp. Laws 1929, § 13415 (Stat. Ann. § 26.910), which provides:

"Nothing in this chapter contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements, in cases of part performance of such agreements."

On the trial in the circuit court plaintiff offered testimony as to statements made by Mr. Thorp indicating the existence of a contractual relation between himself and plaintiff. In this connection plaintiff's witness, Edgar R. Hackett, testified as follows:

"*Q.* Did Mr. Thorp ever tell you of his dealings he had with Daugherty?

"*A.* Yes, to a certain extent.

"*Q.* He did. About this 80-acre farm?

"*A*.  Yes.

"He was to pay $300 a year as long as him and his wife lived, and later that was too much so he cut it down to $200.  Daugherty was to pay $300 a year first and later it was cut to $200.  He told me this, oh, about a year ago last spring before the murder.

"*Q*.  Was Daugherty to do anything else, any other conversation?  Tell what Daugherty was to do except pay some money.

"*A*.  Except improving it all the time.

"*Q*.  I mean by the Thorps.  Was there any more about looking after him or taking care of him?

"*A*.  No.

"And for this Daugherty was to get this 80-acre farm, after the death of the two of them, then this 80-acre farm would belong to Daugherty."

The witness further testified that Mr. Thorp referred to "getting rent money" for plaintiff.  He further stated that plaintiff made certain improvements on the farm but disclaimed any knowledge as to who paid for them.

The witness Fred Barnett also testified as to conversations between himself and Mr. Thorp in which the latter stated that there was an agreement between himself and plaintiff whereby plaintiff was to look after Mr. and Mrs. Thorp, take them places where they wished to go, pay $200 per year, and have the farm on the death of the survivor of Mr. and Mrs. Thorp.  With reference to such payment the witness stated:

"He [Thorp] said the agreement was that he was to live there and pay $200 a year as rental for the farm during this time."

Mrs. Barnett testified, also, as to statements made by Mr. Thorp, consistent with a testamentary intent on the latter's part to leave the farm to plaintiff.

Plaintiff further claimed that the will referred to in the fifth paragraph of the bill of complaint was accidentally destroyed. There is, however, no showing in the record as to the contents of such will, if made as claimed. The proofs disclose that in April, 1945, Mr. Thorp killed his wife, plaintiff's mother, and that shortly thereafter he burned some papers. The claim, that the will referred to was thus destroyed, rests on a statement alleged to have been made by Mr. Thorp, shortly thereafter, that he burned the will. Plaintiff also introduced evidence to show that, following the killing of Mrs. Thorp, James Thorp was confined in the county jail where he committed suicide in June, 1945. On May 3d, preceding his death, a deputy sheriff, at Mr. Thorp's request and direction, prepared a will which was signed and witnessed. Therein the farm in question was devised to plaintiff on condition that plaintiff pay the taxes and insurance on the farm, and also pay to Mr. Thorp the sum of $12 per month for the remainder of his life. The will contained the further stipulations that Mr. Daugherty was to pay the funeral expenses of Mr. Thorp, place a marker on his grave, pay any debts that he might have at the time of his death, and also place a monument, costing not less than $500, on the lot where Mrs. Thorp was buried. The name of plaintiff was subsequently deleted from this will, indicating that Mr. Thorp had, for some reason, changed his mind with reference to the devise of the farm. The paper was offered in evidence, presumably on the theory that it was an admission by Mr. Thorp as to the existence of a contract.

Following the introduction of plaintiff's proofs on the trial, defendants moved to dismiss the bill of complaint. The trial court granted the motion, holding that he was unable to determine definitely

from the evidence the terms of the agreement between plaintiff and Mr. Thorp, and that there was insufficient proof of part performance to justify the granting of the relief sought. From the decree entered plaintiff has appealed.

The burden of proof was on plaintiff to establish by clear and satisfactory evidence, first, that the contract was made as claimed by him, and, second, that there were such acts of performance on his part, under the contract, as fairly entitled him to the remedy of specific performance. *Bame* v. *Bame,* 250 Mich. 515; *Hornbeck* v. *Midwest Realty, Inc.,* 287 Mich. 230; *Eicholtz* v. *Grunewald,* 313 Mich. 666. In support of his claim plaintiff relies on evidence of the admissions made by Mr. Thorp during his lifetime, with reference to which certain witnesses testified. Commenting on this character of testimony, it was said in *Johnson* v. *Douglas,* 281 Mich. 247:

"Testimony of admissions made, or claimed to have been made, in chance or casual conversations is entitled to but little weight. It is the weakest kind of evidence, *Wales* v. *Newbould,* 9 Mich. 45; *Wild* v. *Wild,* 266 Mich. 570; *Hope* v. *Detroit Trust Co.,* 275 Mich. 213; *McInerney* v. *Detroit Trust Co.,* 279 Mich. 42, and testimony tending to establish such admissions should be received with caution; and when such admissions are claimed to have been made by one deceased, this caution should deepen into suspicion."

See, also, *King* v. *Luyckx,* 280 Mich. 117.

As pointed out in *Kerns* v. *Kerns,* 303 Mich. 23, testimony indicating a testamentary intention cannot be made the basis of a finding of a contractual relation. Based on a careful examination of all the

testimony in the record we think that the trial court was right in concluding that the proofs offered by plaintiff were insufficient to permit a finding as to the specific details of the arrangement entered into between plaintiff and James Thorp.

Assuming, for the purposes of discussion, that a contract was made substantially as claimed by plaintiff, the question arises whether the proofs introduced by plaintiff on the trial show such performance on his part as entitles him to the equitable relief sought. The rule is too well settled to require citation of authority that payment of money is not sufficient to remove a contract from the operation of the statute of frauds. It is also settled law that acts done prior to the making of a contract cannot be regarded as performance under it. See *Dabanian* v. *Rothman*, 291 Mich. 31 (125 A. L. R. 1465); *Lapedus* v. *Weinberg*, 292 Mich. 439. In the latter case it was said:

"Acts performed in order to obtain the claimed oral agreement for a lease do not constitute part performance under an oral lease."

In the case at bar, it appears that plaintiff moved from his former home to the farm in question in the spring of 1943, while the arrangement was merely tentative. It is a fair conclusion that part, at least, of the services rendered by him to Mr. and Mrs. Thorp were performed prior to the summer of 1944. With reference to the matter of improvements on the farm, it is apparent that most, if not all, were made before the condition precedent in the arrangement between the parties was performed. It clearly appears that the testimony with reference to the improvements was offered for the purpose of showing reliance by plaintiff on the contract, and

not on the theory that they constituted partial performance. In the record we find the following:

"*Mr. Post:* We don't claim in the bill of complaint that Mr. Daugherty agreed to make these improvements. We claim that relying—
"*The Court:* You claim he did make them.
"*Mr. Post:* We claim he did make them; relying on the fact that he was going to get the farm, he did make them."

The evidence does not show the details of the services claimed to have been rendered by plaintiff to Mr. and Mrs. Thorp. Apparently they were of the kind and character that a son may reasonably be expected to perform for his parents. While the will made by Mr. Thorp in May, 1945, referred to the payment of taxes and insurance, and the contract, as set forth in the bill of complaint, made mention thereof, there is no evidence that plaintiff paid either. It is apparent, also, that if the payments made by plaintiff to Mr. Thorp, claimed to have been admitted by the latter in conversations with the witnesses, were by way of rental for the use of the property, they may not properly be regarded as partial payment for it. In any event payment of money is not sufficient to obviate the bar of the statute of frauds. It is conceded that the alleged undertakings of the plaintiff to pay the debts of Mr. Thorp, his funeral expenses, and the cost of the erection of a marker and monument, have not been performed. The evidence relied on in support of the claim of part performance is obviously meager. Moreover, part performance, even if established by competent proof, is not alone sufficient to justify equitable relief in a case of this character. In *Lyle* v. *Munson,* 213 Mich. 250, it was said:

"Part performance, while an essential in the test, does not in itself comprehend the whole doctrine of equitable relief in this class of cases. Misleading, fraudulent conduct by act or acquiescence is the underlying thought which moves the chancery court under the principle of equitable estoppel to deny resort to the statute of frauds as an instrument of fraud. The question is not alone one of part performance, but as said in *Meach* v. *Perry,* 1 Chip. (Vt.) 182 (6 Am. Dec. 719):

"'Does the part performance, with the attending circumstances, make a case of fraud, against which a court of equity ought to relieve?'"

See, also, *Harrison* v. *Eassom,* 208 Mich. 685; *Policha* v. *Voss,* 292 Mich. 494; *Morten* v. *Zevalkink,* 304 Mich. 572.

Applying the principles suggested by these cases, and others of like import, to the facts involved in the case at bar, the conclusion follows that plaintiff has failed to show such equities in his favor as entitle him to relief by way of specific performance. He has had the use of the farm in question since the spring of 1943. The improvements which he claims he made in reliance on the agreement took place, in the main, while the arrangement was merely tentative; and as before noted there is no specific showing in the record that plaintiff paid for them. Apparently they were of a character that tended to facilitate his enjoyment of the property as a tenant. *Payne* v. *Jones,* 230 Mich. 257; *McClellan* v. *Moore,* 272 Mich. 630; *White* v. *Lenawee County Savings Bank,* 299 Mich. 109 (136 A. L. R. 259).

On the trial plaintiff undertook to testify that a paper, which he sought to introduce in evidence as containing the substance of the will claimed to have been made by Mr. Thorp in July, 1944, was in Mr. Thorp's handwriting. The trial judge, on objection,

excluded the testimony as equally within the knowledge of the deceased. Such ruling was obviously based on 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914), which reads in part:

"When a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all to matters which, if true must have been equally within the knowledge of such deceased person."

Whether the writing in question contained the substance of the alleged will, and likewise the writing thereof, were matters within the knowledge of James Thorp. The ruling of the trial court was correct. *Ripley* v. *Seligman,* 88 Mich. 177.

Plaintiff also undertook to testify as to the improvements that he claimed to have made on the farm in reliance on the contract. This testimony was also properly excluded under the statutory provision, above quoted. Plaintiff's witness, Edgar R. Hackett, testified that Mr. Thorp went to the farm nearly every day, that he supervised what Daugherty was doing, and helped him. Obviously, the nature and extent of the improvements were within the knowledge of Mr. Thorp.

The decree of the trial court is affirmed, with costs to defendants.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.