JAYE v TOBIN

WHITE v TOBIN

OPINION OF THE COURT

1. VENDOR AND PURCHASER—STATUTE OF FRAUDS—ESTOPPEL.

A party is estopped from raising the defense of the statute of frauds where his predecessor in interest had employed real estate brokers, without giving them written authority, who entered into transactions for the sale of land, of which the party was aware at the time of his purchase of the property, and where he took no action to cause the brokers to cease their activities despite the fact that he stated he had no intention of selling the property at the price in question (MCLA 566.108).

2. VENDOR AND PURCHASER—CANCELLATION CLAUSE—MUTUALITY.

A cancellation clause in a purchase agreement for real property does not make the contract invalid for lack of mutuality because cancellation releases both parties from the obligation.

DISSENT BY LEVIN, P. J.

3. VENDOR AND PURCHASER—STATUTE OF FRAUDS—PART PERFORM-ANCE—PURCHASE MONEY.

*Payment of money by a purchaser under a contract for the sale of land, without more, will not remove the contract from the operation of the statute of frauds (MCLA 566.108).*

4. VENDOR AND PURCHASER—STATUTE OF FRAUDS—EQUITABLE ESTOP-PEL—PART PERFORMANCE.

*Part performance is an essential in the test to determine whether a seller of land should be estopped to rely on the statute of frauds to avoid specific performance (MCLA 566.108).*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 49 Am Jur, Statute of Frauds §§ 581–585.
[2] 55 Am Jur, Vendor and Purchaser § 580.
[3] 49 Am Jur, Statute of Frauds § 459
[6] 49 Am Jur, Statute of Frauds § 563.
  55 Am Jur, Vendor and Purchaser §§ 528–530, 553.

5. VENDOR AND PURCHASER—STATUTE OF FRAUDS—PART PERFORM-
ANCE—PURCHASE MONEY.

   *Part performance by the purchaser of land sufficient to remove
   the contract from the statute of frauds means conduct by the
   purchaser beyond the mere payment of purchase money
   (MCLA 566.108).*

6. VENDOR AND PURCHASER—STATUTE OF FRAUDS—REMEDIES—DAM-
AGES.

   *A purchaser of land who cannot maintain an action in equity for
   specific performance of the contract to sell because of the
   statute of frauds cannot obtain alternative relief by an action
   at law for damages; his only remedy is an action for restitution
   of his money paid (MCLA 566.108).*

Consolidated appeals from Alpena, Philip J.
Glennie, J. Submitted Division 1 March 8, 1972, at
Detroit. (Docket Nos. 11507, 11508.) Decided Sep-
tember 26, 1972. Leave to appeal denied, 389 Mich
797.

Complaints by David and Wanda E. Jaye, Je-
rome and Josephine Jodloski, and Anthony and
Jane Narkum, and by Howard T. and Margaret L.
White, against Marshall E. Tobin, Irving Stollman,
Harry E. Wolf, and C. I. Rutledge, for specific
performance of contracts to sell land, or, in the
alternative, for damages. Judgment for plaintiffs.
Defendant Tobin appeals. Affirmed.

*Milmet & Vecchio,* for plaintiff.

*Alspector, Sosin, Mittenthal & Barson,* for de-
fendant Marshall E. Tobin.

Before: LEVIN, P. J., and V. J. BRENNAN and
VAN VALKENBURG,* JJ.

V. J. BRENNAN, J. On November 17, 1965, James
Cole, C. I. Rutledge and Harry Wolf (and their

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

respective wives) purchased approximately 2,700 acres of land surrounding Beaver Lake in Alpena County. Most of this land was resold to a hunt club and is not involved in the present suit. The remainder of the land, approximately 600 acres, was immediately resold to Irving Stollman by land contract dated November 17, 1965.

By a written agreement dated April 18, 1966, Stollman retained Wolf and Rutledge as co-brokers to sell lots to be subdivided from the 600 acres on Beaver Lake. Wolf and Rutledge were to receive one-third of the net profits from the sales. Wolf and Rutledge then proceeded to advertise the property and solicit buyers. The plaintiffs, and their respective wives, entered into "purchase agreements" with Wolf and Rutledge for lots in the proposed subdivision.

Sometime in the summer of 1967, Wolf and Rutledge ceased advertising and soliciting buyers because improvements on the property were not proceeding according to schedule and because Stollman defaulted on the land contract. Faced with foreclosure proceedings on the land contract, Stollman then assigned his interest in the property to one Marshall Tobin, on September 16, 1967.

Plaintiffs were then informed that Mr. Tobin was the new owner of the subdivision and that the name of the subdivision had been changed. Mr. Tobin did not regard the "purchase agreements" as purchase agreements, but rather as deposits, and attempted to renegotiate sales with those who had entered into such agreements with Wolf and Rutledge.

A controversy arose regarding the nature of these agreements resulting in the present lawsuit which was tried by the circuit court, sitting with-

out a jury, in Alpena County. The circuit judge
found for plaintiffs, and awarded either specific
performance or a certain amount of money dam-
ages for each lot purchased against the defendant
Tobin. Since all plaintiffs elected the money dam-
ages, any issue in this case regarding specific
performance is moot. The defendant appeals and
raises several issues.

The defendant first argues that the "purchase
agreements" are void for failure to comply with
the statute of frauds. His argument is based on the
following language from that statute:

"Every contract for the leasing for a longer period
than 1 year, or for the sale of any lands, or any interest
in lands, shall be void, unless the contract, or some note
or memorandum thereof be in writing, *and signed by
the party by whom the lease or sale is to be made, or by
some person thereunto by him lawfully authorized in
writing:* * * * ." MCLA 566.108; MSA 26.908.

The defendant is correct in stating that Wolf and
Rutledge had no written authority from Stollman
to convey the lots in question. However, as the
plaintiffs indicate, a party may be estopped from
raising the statute of frauds. In *Hatch v Wolack,*
316 Mich 258, 262 (1946) and again in *Kent v Bell,*
374 Mich 646, 653 (1965), our Supreme Court cited
with approval the following language from *Lyle v
Munson,* 213 Mich 250, 260 (1921):

"Misleading, fraudulent conduct by act or acquies-
cence is the underlying thought which moves the chan-
cery court under the principle of equitable estoppel to
deny resort to the statute of frauds as an instrument of
fraud."

Stollman, and therefore Tobin, his successor in
interest who was aware of these transactions at
the time of his purchase of the property, received

regular reports on the activities of Messrs. Wolf and Rutledge. He took no action to cause them to cease their activities despite the fact that he stated he had no intention of selling the property at the prices in question. Due to his silence and acquiescence, defendant will not be permitted to raise the statute of frauds.

Defendant next argues that the purchase agreements are void for lack of mutuality. His argument is based on a provision in that agreement which provides that the purchasers may terminate the agreement at will any time prior to the delivery of a title insurance policy.[1] Defendant's argument is not well taken. First, it has long been the law in this state that a cancellation clause does not invalidate a contract. *J R Watkins Co v Rich,* 254 Mich 82 (1931). And second, a contract lacks mutuality when one party is obliged to perform, but not the other. A cancellation clause releases both parties from the obligation. Therefore such an option in a contract does not render it invalid for lack of mutuality.

The final argument to be considered is defendant's assertion that the plaintiffs failed to establish an adequate basis on which to compute damages. The record contained uncontradicted testimony which established the current market price of the property which was evidently used as a basis by the trial court in determining the amount of damages. Defendant's argument is therefore without merit.

Affirmed.

VAN VALKENBURG, J., concurred.

[1] Such title insurance policies were never delivered since the property was not platted until October of 1968.

LEVIN, P. J. *(dissenting).* The provision of the statute of frauds which declares that a contract for the sale of any interest in land is void unless it is in writing and signed by or upon the *written authorization* of the party by whom the sale is to be made[1] goes on to state that this requirement shall not "be construed to abridge the powers of the court of chancery to compel the specific performance of agreements, in cases of part performance of such agreements".[2]

It is not claimed that any of the purchaser-plaintiffs acquired possession of a lot or made improvements on the lot or, indeed, did anything beyond payment of a relatively small deposit under a contract to purchase the lot entered into with a person not authorized in writing by the owner to sell the lot.

In these consolidated cases, three of the purchaser-plaintiffs made deposits of $200 and the fourth made a $400 deposit on a purchase price of $3,950 per lot. The deposits were turned over to a bank in trust; defendants have offered to cause the deposits to be returned to the purchasers.

Time and again the Michigan Supreme Court has declared that payment of money by a purchaser under a contract for the sale of land, without more, will not remove the contract from the operation of the statute of frauds and, accordingly, unless the purchaser can show conduct in addition to the payment of purchase money a court of equity may not grant specific performance.

"The rule is too well settled to require citation of authority that payment of money is not sufficient to remove a contract from the operation of the statute of

[1] MCLA 566.108; MSA 26.908.
[2] MCLA 566.110; MSA 26.910.

frauds." *Daugherty v Poppen,* 316 Mich 430, 439 (1947).[3]

Professor Corbin, in his treatise on Contracts, offers the following explanation of the rule:

"An oral promise for the conveyance of an interest in land is not made specifically enforceable by the mere fact that the plaintiff has paid the price, or a part thereof, in money to the defendant. Such a payment is, indeed, part performance; but the plaintiff can usually be put in statu quo by a judgment for the restitution of the money. The statute of frauds will not be disregarded if the injured party can be put in as good a position as he was in when the contract was made. Frequently restitution is far from the equivalent of the promised performance; but it prevents the defendant from making ill-gotten gains at the plaintiff's expense and it leaves the plaintiff in substantially the same position that would have existed had there been no performance at all. The statute of frauds is an almost complete legal justification for the refusal of performance, even though it is no justification of profiting at the cost of the plaintiff." 2 Corbin on Contracts, § 431, pp 479–481.[4]

Both the Restatement of Contracts[5] and the

---

[3] Similarly, *see Hatch v Wolack,* 316 Mich 258, 261 (1946); *Thorbahn v Walker's Estate,* 269 Mich 586, 591 (1934); *First National Trust & Savings Bank v Beckton,* 258 Mich 227 (1932); *Windiate v Leland,* 246 Mich 659, 666 (1929). *See, generally,* 12 Mich Law & Practice, Statute of Frauds, § 94, pp 517–518, fn 46.

[4] Williston is in accord:

"It is true that payment of a pecuniary consideration by the buyer is not generally held sufficient justification for enforcing specifically an oral contract to convey land, the purchaser being left to his quasi contractual remedy of recovering back what he has paid; and the rule is not changed though the vendor is insolvent and the quasi contractual remedy is therefore ineffectual." 3 Williston on Contracts (3d ed), § 494, pp 563–564.

[5] "Where, acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor

"(a) makes valuable improvements on the land, or

"(b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price, the purchaser or the vendor may specifically enforce the contract.

proposed Restatement of Contracts, Second,[6] declare that payment of purchase money is insufficient to remove the contract from the statute.

In the cases relied on by the majority, the plaintiffs showed more than the payment of purchase money.

---

\* \* \*

"Illustrations:

\* \* \*

"3. A and B enter into an oral contract for the sale of Blackacre by A to B for $5000. B pays $5000 but is not given possession of Blackacre. A may refuse to transfer it. It is immaterial that A is insolvent, precluding full recovery by B of the price which he has paid." 1 Restatement, Contracts, § 197, pp 260–261.

[6] It is proposed to revise the black letter to read as follows:

"A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement."

The reporter comments:

"*a. Historical note.* This Section restates what is widely known as the 'part performance doctrine.' Part performance is not an accurate designation of such acts as taking possession and making improvements when the contract does not provide for such acts, but such acts regularly bring the doctrine into play. The doctrine is contrary to the words of the Statute of Frauds, but it was established by English courts of equity soon after the enactment of the Statute. Payment of purchase-money, without more, was once thought sufficient to justify specific enforcement, but a contrary view now prevails, since in such cases restitution is an adequate remedy. English decisions treated a transfer of possession of the land as sufficient, if unequivocally referable to the oral agreement, apparently on the ground that the promise to transfer had been executed by a common-law conveyance. Such decisions are not generally followed in the United States. Enforcement has instead been justified on the ground that repudiation after 'part performance' amounts to a 'virtual fraud.' A more accurate statement is that courts with equitable powers are vested by tradition with what in substance is a dispensing power based on the promisee's reliance, a discretion to be exercised with caution in the light of all the circumstances. Compare § 90."

Illustration 3 has been rewritten as Illustration 1, *viz.:*

"1. A and B agree by an unsigned writing that A will sell Blackacre to B for $5000. B pays the price to A as agreed, and A accepts the payment but refuses to transfer the land as agreed. B is not entitled to specific performance, but can recover the amount of the payment." Restatement, Contracts, 2d (Tent Draft No 4, 1968), § 197, pp 175–176.

In *Hatch v Wolack,* 316 Mich 258 (1946), the purchaser-plaintiffs had entered into a separate contract with the seller-defendant under which the seller undertook to build a house for the purchasers, and the purchasers had obtained, in a period during which there existed a critical shortage of building materials, "the necessary priorities" to build the house based on the ill health of one of the purchasers. The damages, said the Michigan Supreme Court, "cannot be ascertained with certainty in the instant case".

In *Kent v Bell,* 374 Mich 646, 652 (1965), the Supreme Court recognized the need to show special detriment when it noted that the purchaser had not pleaded with particularity what he had done *"in addition* to his actual hours of labor. It would be this performance, if not readily measurable by a pecuniary standard, which might be the consideration for decreeing specific performance". (Emphasis by the Court.)

*Lyle v Munson,* 213 Mich 250, 260 (1921), is the typical case where relief is granted. The purchaser leased the property with an option to purchase. He took possession, made improvements and accumulated materials in preparation to erect buildings. The words quoted in the majority opinion from the opinion in the *Lyle* case—"misleading, fraudulent conduct by act or acquiescence is the underlying thought which moves the chancery court" to estop the seller from relying on the statute of frauds— are preceded by the following sentence: "Part performance, while *an essential in the test,* does not in itself comprehend the whole doctrine of equitable relief in this class of cases".[7] (Emphasis

---

[7] The entire thought of the Court reads as follows:

"Part performance, while an essential in the test, does not in itself comprehend the whole doctrine of equitable relief in this class of cases. Misleading, fraudulent conduct by act or acquiescence is the

supplied.) Here, however, there was no part performance—payment of money by itself not constituting part performance for the purposes of granting equitable relief from the statute of frauds.

Professor Pomeroy, in his treatise on Equity
Jurisprudence, discusses the kinds of seller conduct which will be regarded by a court of equity as
a "virtual fraud"; he states that payment of the
price in whole or in part does *not* constitute part
performance within the doctrine:

> *"Fundamental ground of the jurisdiction.*—The
> ground is equitable fraud; not an antecedent fraud in
> entering into the contract, but a fraud inhering in the
> consequence of setting up the statute as a defense. If
> the defendant knowingly permits the plaintiff to do acts
> in part performance of the verbal agreement, acts done
> in reliance on the agreement, which change the rela
> tions of the parties and prevent a restoration to their
> former condition, it would be a virtual fraud for the
> defendant to interpose the statute as a defense, and
> thus to secure for himself the benefit of the acts of part
> performance, while the plaintiff would be left not only
> without adequate remedy at law, but also liable for
> damages as a trespasser (see §§ 864–867, 921). It follows
> from this principle that the acts of part performance
> must be done by the party seeking to enforce the
> contract; and must be done in pursuance of the con
> tract, and with the design of carrying the same into
> execution; and must be done with the consent, express
> or implied, or knowledge, of the other party; and must
> alter the relations of the parties.
>
> *"Acts of part performance.*—The following acts do *not*
> constitute a part performance within the doctrine: Acts
> done prior to the contract; acts merely preparatory or

---

underlying thought which moves the chancery court under the principle of equitable estoppel to deny resort to the statute of frauds as an
instrument of fraud. The question is not alone one of part performance, but as said in *Meach v Perry,* 1 Chip (Vt) 182:

" 'Does the part performance, with the attending circumstances,
make a case of fraud, against which a court of equity ought to
relieve?' " *Lyle v Munson,* 213 Mich 250, 260 (1921).

ancillary to the agreement, such as delivering abstract of title, measuring the land, drawing up deeds, etc.; marriage alone; payment of the price in whole or in part.

"The important acts which *do* constitute a sufficient part performance are actual, open *possession* of the land; or permanent and valuable *improvements* made on the land; or these two combined; special acts, personal services, etc." 4 Pomeroy's Equity Jurisprudence (5th ed), § 1409, pp 1057–1058. (Emphasis by the author.)

In a word, "part performance" means conduct by the purchaser beyond the mere payment of purchase money. If the rule were otherwise, if payment of purchase money removed the contract from the statute of frauds, then, since payment of some deposit is customary, almost every contract otherwise void under the statute would become specifically enforceable—what is now the exception would become the norm, and enforcement of the statute of frauds would become so rare that it might be capricious to enforce it at all.[8]

---

[8] *See* 49 Am Jur, Statute of Frauds, § 580, p 887, and text accompanying fn 8. The discussion is comprehensive and edifying (§§ 578–585). The authors state in part:

"In order to escape the effect of the statute upon the theory of fraud, one must establish that he acted in reliance on the contract and on the acts or acquiescence of the other party thereto in such way as to have changed his position or prejudiced himself. The fraud against which the courts grant relief, notwithstanding the statute of frauds, consists in a refusal to perform an agreement upon the faith of which the plaintiff has been misled to his injury or made some irretrievable change of position, especially where the defendant has secured an unconscionable advantage, and not in the mere moral wrong involved in the refusal to perform a contract which by reason of the statute cannot be enforced. When one party induces another, on the faith of a parol contract, to place himself in a worse situation than he could have been if no agreement existed, and especially if the former derives a benefit therefrom at the expense of the latter, and avails himself of his legal advantage, he is guilty of a fraud, and uses the statute for a purpose not intended—the injury of another—for his own profit. In such cases, equity regards the case as being removed from the statute of frauds and will in proper cases enforce the contract or otherwise interfere to prevent the application of the statute." 49 Am Jur, Statute of Frauds, § 582, pp 887–888.

Similarly, if an increase in the value of the land makes it inequitable or a "virtual fraud" not to enforce the contract, then every oral contract the purchaser desires to enforce would become enforceable—purchasers and sellers alike do not seek to enforce bad bargains.

Nor can the plaintiffs obtain alternative relief in damages for the nonperformance of the purchase contracts void under the statute of frauds. An action at law for *damages*—as distinguished from an action for *restitution*[9]—cannot be maintained as an alternative to specific performance unless an action for specific performance can be maintained.[10] To state it differently, the purchase contracts being void, the plaintiffs may only obtain restitution of the deposit money. They may not enforce the contracts at law (damages) or in equity (specific performance).

---

[9] *See* 2 Restatement, Contracts, § 355, p 614.

[10] *See* Restatement, Contracts, 2d (Tent Draft No 4, 1968), § 197, pp 177–178, Comment c; *Thorbahn v Walker's Estate, supra.*