**COMMERCIAL MOVIE RENTAL, INC., a Minnesota corporation, Plaintiff,**

v.

**LARRY EAGLE, INC., a Michigan corporation, Defendant.**

**No. K88–167 CA7.**

United States District Court, W.D. Michigan.

May 15, 1989.

228

Campbell, Keenan, Harry & Cooney by C. Daniel Harry, Clarkston, Mich., for plaintiff.

Fette, Dumke & Passaro by Michael E. Dumke, St. Joseph, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on defendant, Larry Eagle, Inc.'s ("Eagle") motion for summary judgment. For the reasons stated below, the Court will grant that motion.

In September 1986, Eagle entered into an agreement with Commercial Movie Rental, Inc. ("Commercial"), whereby Commercial agreed to provide Eagle with video tape cassettes and video tape recorders for rental to the public. Complaint, Exhibit A. Eagle agreed to display the tapes in its convenience stores and Commercial agreed to train Eagle's employees in movie rental operations and to periodically update Eagle's supply of tapes.[1] Each week, Eagle was to pay Commercial one half of its revenues from the rental of tapes and video cassette recorders. The agreement was to last for eighteen months. Either party could terminate the agreement on thirty days written notice. If Eagle terminated the agreement prior to its expiration, or if it chose not to renew the agreement upon its expiration, the agreement requires Eagle to refrain from renting video tape cassettes or recorders for eighteen months. Alternatively, Eagle could rent tapes if it paid Commercial $650.00 per month for eighteen months. The agreement allowed Commercial to immediately remove its property from Eagle's stores in the event of a termination. It further provides that:

> COMMERCIAL MOVIE RENTAL, INC. shall not be liable for compensation or damages of any kind, whether on account of the loss by [EAGLE] of present or prospective profits, or anticipated sales, expenditures, investments or commitments made in connection with this agreement, or on account of any other event or cause whatsoever.

Exhibit A at § 11. The agreement expressly allowed Commercial to terminate its relationship with Eagle if Eagle obtained tapes

---

1. Eagle operates convenience stores in Niles, Michigan, Benton Harbor, Michigan, and South Bend, Indiana. Commercial supplied video tape cassettes and recorders to the Niles and South Bend stores.

or recorders for rental from another supplier.

Both parties complied with these terms without incident until October, 1988. At that time, Eagle moved its Niles, Michigan store to a new location. When Ken Kociuba, Commercial's president, visited the new location, he noted that no video tapes were on display. Larry Eagle, the store's owner, testified in his deposition that the tapes were not on display because he did not have appropriate display racks for them. Eagle Deposition at 16–17. Mr. Kociuba removed all of Commercial's tapes from the store.[2] The parties disagree on the status of their relationship when the tapes were removed. Mr. Eagle asserts that Commercial was going to call him back to find out when it could restock the Niles store. Commercial argues that Eagle was supposed to contact it when the store was ready to be restocked and that its numerous telephone calls to Eagle went unanswered. By November 30, 1988, Commercial learned that Eagle had obtained a new supplier for video tapes. Commercial removed its video tapes from the remaining Eagle stores.[3] Commercial then filed its complaint for breach of contract, seeking to recover the liquidated damages provided for in its contract with Eagle.

### Standard

■ In considering a motion for summary judgment, the narrow questions presented to this Court are whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." F.R.Civ. Proc. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987). The Court must read the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### Discussion

■ The defendant argues that its contract with Commercial is void for lack of mutuality because the contract exempts Commercial from any liability for breach while subjecting Eagle to liquidated damages or a non-competition clause whenever the contract is terminated, whether by breach or otherwise. Plaintiff argues that the contract does not attempt to exempt it from all liability, and that paragraph 11.2 is intended only to protect Commercial from damages for lost prospective profits where a retailer's profits from the business do not meet the retailer's expectations. Plaintiff also points out that the contract obligates Commercial to perform a number of acts, including restocking retailers' stores and training them in the movie rental business. Finally, plaintiff notes that its relationship with Eagle was not so "one-sided" as to render this contract unconscionable, since Eagle negotiated for at least one important concession from Commercial, the elimination of a flat rental fee in favor of the weekly profit split provided for in the contract.

■ Mutuality of obligation is an essential element of every contract. *Johnson v. Douglas*, 281 Mich. 247, 256, 274 N.W. 780 (1937); *McInerney v. Detroit Trust Co.*, 279 Mich. 42, 46, 271 N.W. 545 (1937). "A contract lacks mutuality when one party is obligated to perform, but not the other." *Jaye v. Tobin*, 42 Mich.App. 756, 760, 202 N.W.2d 712 (1972). *See also* 5 Callaghan's

---

**2.** Commercial indicates that it removed the tapes from Eagle's Niles store because it was time to restock the South Bend store. Some of the tapes were apparently sent to that store. Commercial also argues that it was going to restock the Niles store when Eagle informed Commercial that the display racks were in place.

**3.** It appears that, until January, 1988, the Eagle stores continued to use plaintiff's signs to advertise their video rentals, although they were obtaining tapes from a different supplier. After Commercial notified Eagle that it objected to Eagle's continued use of its signs, Eagle removed the signs from its stores. Eagle Dep. at 24.

Michigan Civil Jurisprudence *Contracts* § 6 at 568 (1989). Where a contract obligates only one party to perform, while exempting the other party from any obligation to do so, it lacks mutuality and is void for want of consideration. *Bernstein, Bernstein, Wile & Gordon v. Ross*, 22 Mich.App. 117, 121, 177 N.W.2d 193 (1970) ("Simply stated, mutuality means that both parties to an agreement are bound or neither is bound"). *See* 1 *Williston on Contracts* § 104 at 397–99 (3d ed 1957).

■ As defendant correctly argues, the contract at issue here is void for lack of mutuality because it completely exempts Commercial from all liability for a breach. Paragraph 11.2 states that Commercial "shall not be liable for ... damages of any kind ... on account of any ... event or cause whatsoever." This language is clear and unambiguous. It simply is not susceptible to the interpretation advocated by Commercial. Where a contract is unambiguous, the Court must enforce its terms. *Raska v. Farm Brokers Insurance Co.*, 412 Mich. 355, 361–62, 314 N.W.2d 440 (1982); *Usher v. St. Paul Fire and Marine Insurance Co.*, 126 Mich.App. 443, 447, 337 N.W.2d 351 (1983). "A court cannot remake a contract through construction ... to find a meaning not intended ...," nor can the court "read out ... words ... to reach the results" sought by plaintiff. *Damerau v. Rieckhoff Co., Inc.*, 155 Mich. App. 307, 312, 399 N.W.2d 502 (1986).

■ Contracts, of course, are to be interpreted to enforce the parties' intentions, but where the words of an express contract are unambiguous, extrinsic evidence regarding the parties' "true" intent is inadmissible, and the court must interpret the contract according to its terms. As the Michigan Supreme Court held in *Moore v.*

*Kimball*, 291 Mich. 455, 461, 289 N.W. 213 (1939):

> [W]hen the language of an agreement leaves no doubt as to its meaning ... it must be considered without regard to extraneous facts. The intention of the parties is to be deduced from the language employed by them. The question is not what intention existed in the minds of the parties, but what intention was expressed in the language used; and where unambiguous, the terms of the [contract] are conclusive.

*See also Michigan Chandelier Co. v. Morse*, 297 Mich. 41, 49, 297 N.W. 64 (1941) ("We must look for the intent of the parties in the words used in the instrument. This court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous ..."); *County of Cass v. Lee*, 271 Mich. 491, 494–95, 261 N.W. 74 (1935) ("The intention must be gathered not from what a party now says he then thought but from the contract itself"); *Dunn v. Detroit Federation of Musicians*, 268 Mich. 698, 703, 256 N.W. 581 (1934) ("Where the language of the entire contract is clear and unambiguous, its effect cannot be destroyed by judicial construction"); *Craig v. Bossenbery*, 134 Mich.App. 543, 548, 351 N.W.2d 596 (1984) ("Contractual terms are not subject to judicial interpretation unless they are ambiguous"); *Emmons v. Easter*, 62 Mich.App. 226, 231, 233 N.W.2d 239 (1975) ("if unambiguous, [contracts] are not subject to interpretation and must be enforced as written").

The unambiguous terms of the contract at issue here exempt Commercial from all liability for a breach of its obligations.[4] Commercial's promise to perform is, there-

---

**4.** Paragraph 10.2 of the agreement, which allows either party to terminate the agreement upon 30 days' written notice, does not invalidate the contract. As plaintiff correctly argues, termination or cancellation clauses are enforceable and do not render a contract void for lack of mutuality. *See J.R. Watkins Co. v. Rich*, 254 Mich. 82, 84–85, 235 N.W. 845 (1931); *Jaye v. Tobin*, 42 Mich.App. at 760, 202 N.W.2d 712 ("A cancellation clause releases both parties from the obligation. Therefore, such an option in a contract does not render it invalid for lack of mutuality"). The cancellation clause in this contract is not the clause which renders it unenforceable. Rather, paragraph 11.2, which exempts Commercial from all liability in the event of a breach by it, renders the contract unenforceable because it operates to release only one party, not both, from the obligation to perform.

fore, entirely illusory because, under the unambiguous terms of the contract it drafted, Commercial could never be held liable for the failure to perform those promises. Commercial's illusory promise provided no consideration for the promises made by Eagle. Under the doctrine of mutuality, then, the entire contract is void for lack of consideration. Because Commercial cannot be held to its obligations, neither can Eagle. Thus, Eagle is entitled to judgment in its favor as a matter of law, because the contract it allegedly breached never existed. In light of this ruling, Eagle's remaining arguments need not be considered.

## JUDGMENT

In accordance with the opinion dated May 15, 1989;

IT IS HEREBY ORDERED that Defendant Larry Eagle, Inc.'s Motion for Summary Judgment is GRANTED;

IT IS FURTHER ORDERED that Judgment is entered IN FAVOR OF DEFENDANT and AGAINST PLAINTIFF.