JOHNSON *v.* DOUGLAS.

1. EVIDENCE—VARYING WRITTEN CONTRACT BY SUBSEQUENT PAROL CONTRACT.

   While a written contract may not be contradicted by parol, a subsequent parol contract varying the terms of a written contract may be established.

2. CONTRACTS—ESSENTIAL ELEMENTS.

   The essential elements of a contract are parties competent to contract, a proper subject-matter, a legal consideration, mutuality of agreement and of obligation.

3. VENDOR AND PURCHASER—MODIFICATION OF LAND CONTRACT—INTEREST.

   Contract relating to the matter of throwing off interest on a land contract must be an express contract, the terms of which are openly uttered and avowed at time of making.

4. HUSBAND AND WIFE—TENANCY BY ENTIRETIES—LAND CONTRACTS—ORAL CONTRACT OF MODIFICATION.

   Wife's consent to modification of interest provisions of land contract relating to land held by herself and husband as tenants by the entireties is a condition precedent to valid oral contract of modification.

5. EVIDENCE—ADMISSIONS—HUSBAND AND WIFE.

   The admissions of a husband may not be used to bind the wife's interest in property owned by them as tenants by the entireties.

6. SAME—ADMISSIONS—DECEDENTS.

   Testimony of admissions claimed to have been made in chance or casual conversations is entitled to but little weight, should be received with caution, and when such admissions are claimed to have been made by one deceased the caution should deepen into suspicion.

7. HUSBAND AND WIFE—LAND CONTRACT—MODIFICATION BY PAROL OR GIFT.

Right to modify written land contract relating to land held by husband and wife by the entireties by parol or gift *held*, not to vest exclusively in husband until after death of wife.

8. GIFTS—INTER VIVOS—DELIVERY.

To constitute a gift *inter vivos* there must be either an actual or constructive delivery of the thing given to the donee directly, to some person for him, or to a trustee for that purpose and such a disposition of the object in the donee's favor as places the *jus disponendi* beyond the power of the donor to recall.

9. SAME—TRANSFER OF GIFTS INTER VIVOS MUST BE EXECUTED.

To make a gift *inter vivos* valid, the transfer must be executed since, in the absence of consideration, no action will lie to enforce it.

10. SAME—CONSUMMATION OF GIFT INTER VIVOS.

To consummate a gift *inter vivos* there must be such a delivery from donor to donee as will place the property within the dominion and control of the latter with intent to transfer the title to him.

11. VENDOR AND PURCHASER—MODIFICATION OF LAND CONTRACT—ORAL CONTRACT—GIFTS—INTEREST—EVIDENCE.

Evidence of admissions by decedent vendor to farm hand that plaintiff, decedent's son, would not have to pay interest on land contract for sale of farm by decedent and wife to son and daughter-in-law *held*, insufficient to establish oral contract to vary provisions of land contract or to establish gift, where there was no delivery by the donor and acceptance by the donee.

12. EXECUTORS AND ADMINISTRATORS—RENTAL VALUE OF HOUSE—MILK—PRESUMPTIONS—GRATUITIES—EVIDENCE.

Rental value of house on premises sold to vendees, son and daughter-in-law of vendors, and occupied by vendors during their lifetime and value of milk furnished vendors *held*, in suit for accounting, presumed to have been furnished gratuitously in view of family relation and absence of testimony that during lifetime of decedents plaintiffs intended to charge, or that decedents intended to pay, for them.

13. SAME — ACCOUNTING — GRATUITIES — EVIDENCE — INTENT OF
PARTIES.

Purchasers' claim for rent of house on premises sold and milk
furnished vendors by purchasers, son and daughter-in-law of
vendors, and administrator's claim for services rendered pur-
chasers by vendor on the farm *held*, not entitled to considera-
tion in purchasers' suit against estate for specific performance
of land contract and accounting in absence of evidence that
during lifetime of decedent vendors the parties intended to
charge and pay for such items.

14. COURTS—PROBATE—EQUITY—JURISDICTION.

The probate court has exclusive jurisdiction over the probate of
estates, except where the interposition of chancery is necessary
for some auxiliary purpose.

15. SPECIFIC PERFORMANCE—ACCOUNTING—EQUITY—JURISDICTION.

Equity has jurisdiction over suits for specific performance of
land contracts, especially where amount is disputed and an
accounting is necessary between the parties before specific
performance may be decreed.

16. COURTS — PROBATE — EQUITY — JURISDICTION — DETERMINA-
TION OF AMOUNT DUE UNDER LAND CONTRACT.

Though conveyance by an executor or administrator of land sold
on land contract upon compliance with the contract is pro-
vided for by statute, the probate court is not an appropriate
forum for the determination of disputed questions of fact as
to amount due on the contract; such questions being cognizable
by a court of equity.

17. SPECIFIC PERFORMANCE — DETERMINATION OF AMOUNT DUE —
EQUITY—JURISDICTION.

Court of equity having jurisdiction of question of specific per-
formance in suit by purchasers against administrator of
vendors' estate and determination of amount due on the
written land contract, questions of modification of the written
contract by the claimed parol contract or by gift of interest on
the contract and propriety and legality of the charges made
by defendant for work and labor *held*, properly considered in
determining amount due on the contract.

18. EQUITY—JURISDICTION.

The court of equity, having jurisdiction upon any well-settled
ground of equity, will retain jurisdiction to grant complete
relief.

Appeal from Gogebic; Driscoll (George O.), J. Submitted June 24, 1937. (Docket No. 103, Calendar No. 39,432.) Decided September 1, 1937.

Bill by Julius Johnson and wife against Robert A. Douglas, administrator of the estate of John Johnson, deceased, for specific performance of an agreement, an accounting, allowance of a claim and injunction. Cross-bill by defendant against plaintiffs for money decree. From decree for plaintiffs, defendant appeals and plaintiffs cross-appeal. Reversed.

*Wm. G. Cloon* (*Bernard E. Larson*, of counsel), for plaintiffs.

*Charles M. Humphrey* and *Charles M. Humphrey,* *Jr.,* for defendant.

POTTER, J. John Johnson and wife, Charlotta Johnson, owned the lands and premises involved and December 1, 1922, sold them to Julius Johnson and Augusta Johnson, husband and wife, on land contract for $12,000 which was to be paid, $100 on or before February 15, 1923, and $100 on or before the fifteenth of every month thereafter until the whole sum of $12,000 was paid in full, together with interest at the rate of five per cent. per annum. The interest was not to be paid annually, but the contract provided:

"No payment of interest is to be made until the full amount of principal is paid then all due interest shall be computed and shall bear interest from such time at the same rate as the principal, and same shall be paid in monthly payments by the parties of the second part to the parties of the first part in

same amount, manner and terms as principal had been paid.''

The premises included the homestead of the vendors, and the vendees were the son and daughter-in-law of the vendors. The sale included the livestock and farm machinery and equipment on and used in connection with the premises. The contract provided:

''It is also agreed and understood that the westerly 276 feet of the south half of the north 10 acres of the southwest quarter of the northwest quarter of section 14 in township 47, north of range 47 west, together with all the appurtenances thereto belonging, and now owned and occupied by the parties of the second part, shall remain as their home until such time as the said parties of the second part may decide to dispose of all the property covered by this contract; in case of such disposal or sale the parties of the first part shall have the privilege to occupy as their home said last mentioned dwelling property for the remainder of their earthly life after which same shall revert back to the parties of the second part. * * *

''It is further agreed and understood that the parties to this contract may at any time by mutual agreement exchange dwelling if they should so choose. * * *

''Upon receiving payment in full in the manner above stated, the parties of the first part shall execute and deliver to the parties of the second part or their assigns a good and sufficient conveyance by warranty deed.''

Charlotta Johnson died testate. Her will was probated and the residue of her estate assigned to John Johnson, sole beneficiary, devisee and legatee, as of August 20, 1934. John Johnson died testate after

the death of his wife and his estate was probated. Claims by Julius Johnson, his son, and Stella Anderson, his daughter, were presented in probate court in the amount of $3,615.30 and $590 respectively. There was a dispute as to the amount due from vendees on the land contract above mentioned. The parties were in the probate court and it is claimed, on the one hand, the claims made against the estate of John Johnson by members of his family were to be withdrawn; and, on the other hand, that the matter of the amount due on the contract and the disposition of the claims against the estate of John Johnson, deceased, were to be litigated in this suit.

Plaintiffs, August 24, 1935, filed their bill of complaint herein setting up their relationship to John Johnson, deceased; that Robert A. Douglas had been appointed administrator of the estate of John Johnson, deceased, May 5, 1933; the making of the land contract between the vendors and vendees above mentioned; that they had performed the same, charging John Johnson with rental of the premises in the amount of $3,615.30 for which a claim had been presented in the probate court against his estate, which claim was undetermined, and charging $323.30 against the estate for milk furnished to John Johnson for which a claim had also been presented in the probate court and was undetermined; mentioning the death of Charlotta Johnson and the probate proceedings in her estate, the death of John Johnson, January 18, 1933, and the probate of his estate, naming his heirs; asking specific performance of the land contract; claiming they had no adequate remedy at law; and praying an accounting touching the amount due on the land contract, specific performance of such land contract, that the

amount owed by John Johnson to plaintiffs be ascertained and credited on the land contract, that the distributive share of plaintiff Julius Johnson of the estate of his father, John Johnson, be determined and credited on the land contract and the excess due from John Johnson to Julius Johnson, if any, allowed as a claim against John Johnson's estate, that if the amount be a claim in favor of the estate of John Johnson against plaintiffs that plaintiffs have leave to bring the amount so found to be owing by them into court and deposit the same with the register thereof to be paid to defendant in such manner as the court should direct, that plaintiffs be decreed to be the owners of the land in question covered by the land contract and the decree of the court be recorded as evidence of title, that the legal proceedings commenced by the administrator with the will annexed be restrained, and for other relief.

The defendant, administrator, answered this bill of complaint alleging the claims were presented in the probate court and withdrawn, that the items in such claims were barred by the statute of limitations; claiming $750 was due as principal on the land contract, and that, including interest thereon, there was $2,109.42 due; and, by way of cross-bill, alleged John Johnson had worked on the farm of plaintiffs after its sale to them on land contract 3,650 days, at $3 a day, and that plaintiffs, therefore, owed his estate the sum of $10,950, in addition to the balance on the principal and interest due on the land contract.

The trial court rendered an opinion that the administrator make, execute and deliver a deed of the premises to plaintiffs and that, in default thereof, a certified copy of the decree could be recorded in the office of the register of deeds for Gogebic county;

that the administrator make, execute and deliver to plaintiffs a bill of sale of the personal property on the farm; and that he execute a release satisfactorily acknowledging payment of both principal and interest due defendant on the land contract, and that he release and discharge the liability alleged in the cross-bill for services performed by the deceased, and that plaintiffs discharge all claims and demands against the estate of John Johnson, deceased; that the cross-bill be dismissed; and that plaintiffs have costs against the defendant and execution therefor. The trial court found defendant's cross-bill should be dismissed; that upon payment by plaintiffs to defendant of $600, the balance of the principal under the contract, and the releases herein required, the defendant should execute to plaintiffs a legal and sufficient conveyance of the property covered by said contract; that plaintiffs should execute and deliver to defendant full release and discharge of all claims and liability for or on account of any milk or cream, or use or occupation of the premises; that defendant should execute and deliver to plaintiffs full release and discharge of all claims and liability on account of interest under the contract and for services performed by deceased, John Johnson, for plaintiffs. A decree in accordance with this finding was entered, and from that decree defendant appeals.

The contract provides "no payment of interest is to be made until the full amount of principal is paid." The only testimony relating to the modification of the contract in relation to interest is that of Roy Swanson, a farm hand who worked around the farm and affairs of plaintiffs during the time John Johnson and Charlotta Johnson were both alive and for some time afterward. He testifies that John Johnson said to him that "Julius didn't have to pay

for the interest on the contract because Julius was good to him and took care of him.'' He also testifies John Johnson told him the same thing many times. The record discloses no logical or other reason why John Johnson should make such a statement as claimed by Swanson. His testimony is not satisfactory. He says he had not told anybody about his talks with John Johnson prior to his testimony, and, if this is true, knowledge of John Johnson's admissions to him was never brought home to the knowledge of plaintiffs. There is no other testimony tending to sustain this branch of the case.

It is a general rule that a written contract may not be contradicted by parol. But the rule seems to be established in this State that while a written contract may not be contradicted by parol, a subsequent parol contract varying the terms of a written contract may be established.

"The rule which it is sought to apply is the well-known rule that contemporaneous parol evidence will not be received to alter or vary the terms of a valid written instrument. The distinction is plainly pointed out in the case of *Cohen* v. *Jackoboice*, 101 Mich. 409, cited by counsel for plaintiffs. The true rule is laid down in 17 Cyc. at page 734.'' *Marx* v. *King*, 162 Mich. 258.

The rule as stated in 17 Cyc. p. 734, which the court in *Marx* v. *King, supra*, said was the true rule is as follows:

"The rule forbidding the admission of parol or extrinsic evidence to alter, vary, or contradict a written instrument does not apply so as to prohibit the establishment by parol of an agreement between the parties to a writing, entered into subsequent to the time when the written instrument was executed,

notwithstanding such agreement may have the effect of adding to, changing, modifying, or even altogether abrogating the contract of the parties as evidenced by the writing; for the parol evidence does not in any way deny that the original agreement of the parties was that which the writing purports to express, but merely goes to show that the parties have exercised their right to change or abrogate the same, or to make a new and independent contract.''

The essential elements of a contract are parties competent to contract, a proper subject-matter, a legal consideration, mutuality of agreement, and mutuality of obligation. *McInerney* v. *Detroit Trust Co.*, 279 Mich. 42. A contract relating to the matter of throwing off the interest must have been an express contract, one of which the terms were openly uttered and avowed at the time of the making. 2 Blackstone's Commentaries, p. 442; 2 Kent's Commentaries (14th Ed.), p. 450; 1 Parsons on Contracts (9th Ed.), p. 4; 13 C. J. p. 240. There is no testimony showing an express contract and, under the circumstances, there could be no implied contract setting aside or modifying the specific provisions of the express written contract relating to interest.

When some of these statements were alleged to have been made, Charlotta Johnson, a tenant by the entirety of the lands and premises covered by the written contract, was living. There is no claim she ever consented to a modification of the contract as to interest, and her assent was a necessary condition precedent to a valid contract setting aside the provisions of the express written contract. There was no consideration to support such claimed express oral contract modifying the express written contract. *Widiman* v. *Brown,* 83 Mich. 241; *Peoples*

*Wayne County Bank* v. *Lonyo,* 255 Mich. 481. The admissions of the husband may not be used to bind the wife's interest in the property. *Dawson* v. *Hall,* 2 Mich. 390; *Whelpley* v. *Stoughton,* 112 Mich. 594. The sole admission to support this oral contract must be considered in connection with the provisions of the contract as to the payment of interest that no payment of interest was to be made until the full amount of principal was paid. The testimony offered to support this contract is that of Mr. Swanson above mentioned. Testimony of admissions made, or claimed to have been made, in chance or casual conversations is entitled to but little weight. It is the weakest kind of evidence, *Wales* v. *Newbould,* 9 Mich. 45; *Wild* v. *Wild,* 266 Mich. 570; *Hope* v. *Detroit Trust Co.,* 275 Mich. 213; *McInerney* v. *Detroit Trust Co., supra,* and testimony tending to establish such admissions should be received with caution; and when such admissions are claimed to have been made by one deceased, this caution should deepen into suspicion. 2 Jones on Evidence, § 295; *Wild* v. *Wild, supra; Hope* v. *Detroit Trust Co., supra; McInerney* v. *Detroit Trust Co., supra.*

It is contended by plaintiffs there was a gift by John Johnson, or by John Johnson and his wife, to them of the interest in question. John Johnson, of course, would have no authority to make a gift of that which did not belong to him. The right to modify the written contract by parol or by gift did not vest in John Johnson until after the death of his wife. The gift of the interest in question was a gift *inter vivos* if it was anything.

"To constitute a gift *inter vivos,* there must be a delivery of the thing given, either actual or constructive. It is not necessary that it be delivered to the

person intended directly; it may be delivered to some person for him, or to a trustee for that purpose; but in all cases such a disposition of it must be made in favor of the donee as effectuates the object, and places the *jus disponendi* beyond the power of the donor to recall. *Love* v. *Francis,* 63 Mich. 181 (6 Am. St. Rep. 290). It is well settled that an intention to give, evidenced by a writing, may be most satisfactorily established, and yet the intended gift may fail because no delivery is proved. *Wadd* v. *Hazelton,* 137 N. Y. 215 (33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707). Another well-settled rule in relation to such gifts is that, to make them valid, the transfer must be executed; for the reason that, there being no consideration therefor, no action will lie to enforce it. To consummate such gift, there must be such a delivery from the donor to the donee as will place the property within the dominion and control of the latter, with intent to transfer the title to him. *Gray* v. *Barton,* 55 N. Y. 68, 72 (14 Am. Rep. 181)." *Holmes* v. *McDonald,* 119 Mich. 563 (75 Am. St. Rep. 430).

If there was any release of this interest, it must have been by contract, which contract has not been established by the testimony in this case, or it must have been by gift which, under the circumstances of this case, was never consummated by any delivery by the donor and acceptance by the donee. We cannot hold under the record presented either that an oral contract modifying the written contract was made, or that a gift was made of this interest.

Plaintiffs presented a claim for the rental value of the house situated on the premises sold by the vendors to the vendees and occupied by them (vendors) during their lifetime, and also for having furnished milk to John Johnson during a long period of time. Passing the question of the statute of limita-

tions which is raised by the answer of the defendant, this class of claims which were not made or presented during the lifetime of the deceased, is frequently sought to be established and enforced as a means of looting the estates of deceased persons. Such claims ought not to be encouraged, and the estates of decedents should be protected against them wherever possible. A family relation existed between the parties hereto. The farm and dairy business originally belonged to the vendors. They were turned over to the vendees who paid for them, undoubtedly from the profits derived therefrom. John Johnson, so long as he continued to live and up to a short time prior to his death, continued to work on the farm and in and about the dairy business. There is no testimony John Johnson ever contemplated charging his son for his services, and no competent testimony that Julius Johnson and wife ever charged, or intended to charge, John Johnson and wife for the rental value of the house upon the premises or for the garden used by John Johnson. The family relation existed and the presumption is that the rent, made the basis of plaintiffs' claim, and the milk claimed to have been furnished by Julius Johnson to John Johnson, were not intended to be charged for and are presumed to have been furnished gratuitously. There is no testimony showing that during the lifetime of the parties these things were intended to be charged to John Johnson nor is there any proof that John Johnson expected, in his lifetime, to pay for them. We must hold under the proof in this case there is no competent testimony to warrant their consideration. *Woods* v. *Ayres,* 39 Mich. 345 (33 Am. Rep. 396); *Wright* v. *Senn's Estate,* 85 Mich. 191; *Decker* v. *Kanous' Estate,* 129 Mich. 146; *Weessies* v. *Van Dyke's Estate,*

159 Mich. 180; *Hartle* v. *Keefer's Estate,* 260 Mich.
188; *McInerney* v. *Detroit Trust Co., supra.* And
the same rule applies to the charges made by de-
fendant for the services of John Johnson. *Fletcher* v.
*Fletcher,* 214 Mich. 12; *Krukowski* v. *Paluszewski's
Estate,* 240 Mich. 291; *McInerney* v. *Detroit Trust
Co., supra.* The claim of plaintiffs for rent and for
milk furnished to John Johnson and the claim made
by defendant for personal services of John Johnson
are not supported by the testimony and are dis-
allowed. The alleged modification of the written
contract by the cancellation of the interest, or the
alleged gift of the interest by John Johnson to plain-
tiffs, is not sustained.

Defendant questions the jurisdiction of a court of
equity over the claims presented in the probate court
and sought to be litigated here. There is no question
that the probate court has exclusive jurisdiction
over the probate of estates, except where the inter-
position of chancery is necessary for some auxiliary
purpose. *Powell* v. *Pennock,* 181 Mich. 588. Equity
has jurisdiction over suits for specific performance
of contracts concerning land, especially where there
is a dispute in the amount and an accounting is
necessary between the parties before specific per-
formance may be decreed. Though the statute, 3
Comp. Laws 1929, § 15673, provides for the convey-
ance by an executor or administrator of land sold
on land contract upon compliance with the contract,
the probate court is not an appropriate forum for
the determination of disputed questions of fact in
relation to the amount due upon the contract. Such
questions are cognizable by a court of equity. *Dakin*
v. *Dakin,* 97 Mich. 284. The court having jurisdic-
tion of the question of the specific performance of
the land contract and the determination of the

amount due thereon, the questions of the modification of the written contract by the claimed parol contract or by the gift of the interest upon the contract, and the propriety and legality of the charges made by the defendant for work and labor, may all properly be considered in determining the amount due on the contract. The court of equity, having jurisdiction upon any well-settled ground of equity, will retain jurisdiction to grant complete relief. *Burgess* v. *Jackson Circuit Judge,* 249 Mich. 558.

A decree will be entered reversing the decree of the trial court, disallowing all of the claims above mentioned and providing plaintiffs may have specific performance of the written contract of December 1, 1922, upon paying the balance of the principal due thereon fixed at $600, together with the interest at the rate and in accordance with the terms provided in the written contract. Costs of this court to appellant.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred.